Dinh Tan HO, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–03–00495–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

June 9, 2005.

Rehearing Overruled Aug. 11, 2005.

Tammy Tran, Houston, TX, for appellants.

Carol M. Cameron, Houston, TX, for appellees.

Panel consists of Justices YATES, EDELMAN, and GUZMAN.

### OPINION ON REHEARING[1]

LESLIE BROCK YATES, Justice.

This is an appeal from a murder conviction. Appellant Dinh Tan Ho argues in

---

1. Our opinion of March 15, 2005, is with- drawn and this opinion is substituted in its

seven issues that the trial court erred by (1) denying appellant's motion for continuance, (2) admitting appellant's alleged co-actors' recanted statements to police, (3) admitting extraneous offense evidence, (4) improperly limiting appellant's Sixth Amendment right to confrontation, (5) admitting evidence of appellant's gang membership during the punishment phase of trial, (6) denying appellant's motion for mistrial, and (7) denying appellant's motion for new trial. We affirm.

### BACKGROUND

In the early hours of December 7, 2001, David Bundy, Eric Harrison, Bayard Hill, Mike Miller, and Jabare Rattler left a downtown Houston nightclub and headed home. All five men rode in Harrison's vehicle, which Bundy drove. While still downtown, a blue Honda Civic occupied by three Asian men abruptly cut in front of Harrison's car, nearly causing a collision. At the next stoplight, Rattler began shouting obscenities toward the Civic and even got out of the car at one point to yell. After the light turned green, Bundy drove toward Highway 59, and the men eventually lost sight of the Civic.

Harrison testified that while traveling on Highway 59, he again saw the Civic as it approached Harrison's car from the right rear. Immediately thereafter, one of the passengers of the Civic fired multiple gunshots at Harrison's car. Bundy was shot and killed; Hill, Miller, and Rattler were also hit by gunshots. Rattler later identified appellant in a photo lineup as the shooter. Rattler and Miller identified Jay Le as the driver, and Harrison identified the blue Civic owned by Le as the car from which the shots were fired.

At trial, the State theorized that appellant was the shooter, Le the driver, and Richard Hoang the backseat passenger of Le's Civic. After the shooting, Le and Hoang both made statements to police that they were not with appellant at the time of the shooting and that appellant had admitted to shooting some people on the freeway. Both men recanted their statements that appellant admitted to the shooting, but maintained that they were not with appellant when the shooting occurred. Le testified that appellant had borrowed his car during at least the first two weeks of December 2001 and was in possession of it during the time of the shooting. A jury convicted appellant of murder and assessed punishment of fifty years' imprisonment and a $10,000 fine.

### MOTION FOR CONTINUANCE

In his first issue, appellant contends that the trial court erred in denying his motion for continuance.[2] Three days before trial began, appellant filed a motion for continuance due to an absent witness.

2. The State argues that this issue is not preserved for review because appellant did not complain of the denial of the motion for continuance in his motion for new trial. However, Rule 21.2 of the Texas Rules of Appellate Procedure provides that "[a] motion for new trial is a prerequisite to presenting a point of error on appeal only when necessary to adduce facts not in the record." TEX.R.APP. P. 21.2. Because all facts necessary to address the motion for continuance are in the record, appellant was not required to complain of the denial of the motion for continuance in his motion for new trial in order to preserve this issue for review. *See id.* We do, however, acknowledge that there are cases from the Court of Criminal Appeals that have not been overruled that require a motion for new trial to preserve error on the denial of a motion for continuance. *See, e.g., Taylor v. State,* 612 S.W.2d 566, 569 (Tex.Crim.App. [Panel Op.] 1981) ("The only means of preserving error in the overruling of a motion for continuance due to an absent witness is a motion for new trial.").

The trial court denied this motion on the day the trial began. At the close of evidence, appellant re-urged his motion for continuance, which the court again denied. Appellant complains this was an abuse of discretion.

■ Article 29.06 of the Code of Criminal Procedure requires that a motion for continuance based on the absence of a witness must, among other things, state "[t]he diligence which has been used to procure [the witness's] attendance." TEX. CODE CRIM. PROC. ANN. art. 29.06 (Vernon 1989). The Court of Criminal Appeals has interpreted this to mean not only diligence in procuring the presence of the witness, but also diligence as reflected in the timeliness with which the motion for continuance was presented. *Dewberry v. State*, 4 S.W.3d 735, 756 (Tex.Crim.App.1999); *see also Gonzales v. State*, 505 S.W.2d 819, 821 (Tex.Crim.App.1974) (finding that a motion for continuance due to an absent witness filed on the first day of trial does not show diligence). Similarly, diligence must be shown in applying for a subpoena for the absent witness. *See Varela v. State*, 561 S.W.2d 186, 190 (Tex.Crim.App.1978) (holding that application for subpoena filed a day or two before trial does not show diligence). Further, the Court of Criminal Appeals has long found that diligence in procuring the witness is not shown if several months have passed between the issuance of the indictment and the filing of an application for subpoena. *See, e.g., Welch v. State*, 153 Tex.Crim. 416, 219 S.W.2d 804, 805–06 (1949) (holding that appellant who allowed eight months to pass after filing of indictment before applying for process to issue for absent witness showed a lack of diligence); *Fuller v. State*, 99 Tex.Crim. 475, 270 S.W. 169, 170 (1925) (finding appellant showed insufficient diligence in locating absent witnesses where appellant permitted over six months to

pass before applying for process to issue); *see also Dewberry*, 4 S.W.3d at 756 (finding lack of diligence where counsel knew of absent witness's importance two months before trial but did not attempt to subpoena witness until after trial had started).

Here, appellant was indicted on January 3, 2002. Phuong Vu's affidavit explaining that he was with appellant on the night of the shooting was taken six days later, on January 9, 2002. Appellant filed the motion for continuance on April 11, 2003, just three days before trial began and after the trial date had been reset three times. Appellant applied for a subpoena for Vu approximately two weeks before trial, on March 28, 2003, even though appellant knew of Vu's potential importance as a witness long before this date. Ultimately, appellant waited almost fifteen months after being indicted before applying for a subpoena for Vu. We find that appellant has failed to meet the requirement of diligence as required by article 29.06.

Also, the record does not indicate a probability that Vu's presence would have been secured had the trial court granted the continuance. According to the affidavit attached to the initial motion for continuance, appellant's investigator first attempted to serve Vu with the subpoena on April 1, 2003. Three weeks later and ten days after the initial motion for continuance, appellant renewed the motion at the close of evidence on April 21, 2003. In denying the renewed motion, the trial judge indicated that he did not want to grant a continuance for a person who may never show up. These circumstances do not present compelling grounds for a continuance. *See Rodriguez v. State*, 21 S.W.3d 562, 566 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). We find that the trial court did not abuse its discretion in denying appellant's motion for continu-

ance; accordingly, we overrule appellant's first issue.

## RECANTED STATEMENTS AND EXTRANEOUS OFFENSE EVIDENCE

Appellant argues in his second and third issues that certain evidence admitted at trial violated Rules 401 and 403 of the Texas Rules of Evidence. *See* TEX.R. EVID. 401, 403. In his second issue, appellant contends that the trial court erred in admitting evidence of prior statements made to police by Le and Hoang, whom the State contends were with appellant at the time of the shooting. In his third issue, appellant argues that the trial court erred in admitting evidence of extraneous offenses; specifically, appellant complains of testimony regarding a bullet hole found in Le's car and evidence that appellant discussed a shooting and demonstrated shooting a gun outside Le's grandmother's house a few hours after the freeway shooting. Appellant contends that this evidence is not relevant under Rule 401 and that its prejudicial effect outweighs its probative value under Rule 403.

### *Recanted Statements by Le and Hoang*

In unsworn statements given to police after the shooting, Le and Hoang both stated that they were not with appellant at the time of the shooting and that appellant admitted to shooting at some people on the freeway. At Le's trial for his involvement in the shooting, which occurred a few weeks prior to appellant's trial, both men apparently recanted their statements that appellant had admitted being involved in a shooting. Over appellant's objection, the trial court permitted the State to question Le and Hoang about their statements provided that the State made it clear that Le and Hoang had recanted the statements. On appeal, appellant argues that the trial court's admission of testimony regarding the recanted statements violates Rules 401 and 403 of the Texas Rules of Evidence.

Under Rule 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R. EVID. 401. "Evidence need not by itself prove or disprove a particular fact to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence." *Stewart v. State*, 129 S.W.3d 93, 96 (Tex.Crim.App.2004).

The State's theory at trial was that Le and Hoang were with appellant when the shooting occurred. Evidence that both Le and Hoang made statements to police that appellant admitted to being involved in a freeway shooting and later recanted them is relevant. The statements, even if recanted, indicate that Le and Hoang had knowledge that a freeway shooting had occurred. The statements also show Le's and Hoang's willingness to implicate appellant in order to exonerate themselves. Evidence that shows Le's and Hoang's knowledge of the shooting and their willingness to implicate appellant is relevant because it makes the State's theory that all three men were involved more probable than the theory would be without the evidence.

Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by its prejudicial effect. *See* TEX.R. EVID. 403. Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial. *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex.Crim.App.1991) (op. on reh'g). The burden is on the opponent of the proffered evidence to demonstrate the negative attributes of the evidence and to show how these negative attributes sub-

stantially outweigh the probative value of the evidence. *Id.* An appellate court will reverse a trial court's decision to admit certain evidence only for an abuse of discretion, that is, when the trial court's decision falls outside the zone of reasonable disagreement. *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex.Crim.App.2000).

At a hearing outside the presence of the jury, the trial court insisted that if the State wanted to introduce evidence of the statements, the State must also make it clear that the statements had been recanted. The State did this; Le and Hoang both testified that they had fabricated the statements because they were scared. Hence, the jury was not given the impression that Le and Hoang still maintained that appellant had admitted the shooting to them. Appellant argues that evidence of the statements impressed the jury in an irrational way, but appellant has not demonstrated that the negative attributes of these statements substantially outweigh their probative value. We do not find that the trial court abused its discretion in admitting testimony regarding the statements. Accordingly, we overrule appellant's second issue.

### Bullet Hole Evidence

Le's Civic had a bullet hole in the top of the door frame. Appellant's theory was that the hole did not come from the incident on the freeway, but rather from a drive-by shooting at a café, which occurred a week before the freeway shooting. The café shooting allegedly also occurred while appellant had possession of Le's car. A motion in limine was granted prior to trial regarding any evidence of the café shooting. The State contends the bullet hole could have occurred during the freeway shooting.

During the testimony of Wayne Wendel, a detective with the Houston Police Department who investigated the freeway shooting, the State asked whether Wendel found any bullet holes in Le's car. Appellant objected, arguing that the evidence was not relevant and violated Rule 403 because the bullet hole could not be tied to the freeway shooting and had actually occurred during the café shooting. The trial court allowed the testimony as long as the prosecutor did not introduce evidence of the café shooting. Wendel testified that Le told him about the bullet hole during their interview about two weeks after the freeway shooting. Wendel had examined the bullet hole in the car and testified that he believed it had come from a shot being fired from inside the car, but he did not speculate as to whether the bullet hole occurred during the freeway shooting. Later, Le testified that appellant had borrowed his car in early December and that appellant admitted that the car had a bullet hole in it when he returned the car to Le, which was after both the café and freeway shootings.

■ As previously discussed, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex.R. Evid. 401. Harrison identified Le's car as the vehicle from which the shots were fired. Le testified that the bullet hole was caused at some point in early December 2001 when appellant borrowed Le's car. We find that the existence of a bullet hole in Le's car has a tendency to make the fact that Le's car was involved in the freeway shooting more probable and is thus relevant under Rule 401.

■ Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by its prejudicial effect. *See* Tex.R. Evid. 403. The existence of the bullet hole is relevant in es-

tablishing the involvement of Le's car in the freeway shooting. Appellant contends that evidence of the bullet hole is unfairly prejudicial because the bullet hole occurred during the café shooting. This is the same argument asserted by appellant as to why the bullet hole is not relevant. However, there is no definitive evidence that the bullet hole occurred during the café shooting. Further, the jury never heard any mention of the café shooting during the guilt-innocence phase. Because the jury did not know about the café shooting, we find that the bullet hole evidence could not have been unfairly prejudicial to appellant. Appellant was free to cross-examine witnesses to establish that the bullet hole might have been caused during the café shooting; however, appellant chose not to risk introduction of this topic to the jury. Appellant has failed to overcome the presumption that evidence of the bullet hole was more probative than prejudicial. Accordingly, we find that the trial court did not abuse its discretion in admitting evidence of the bullet hole in Le's car.

### Shooting Discussion

■ Both Le and Hoang claim they were watching a movie at Le's grandmother's house in the early hours of December 7, 2001, when appellant arrived at the house in Le's car. Hoang testified that he and appellant discussed a shooting as they stood outside the house.[3] Appellant also

demonstrated shooting a gun with his hands during the conversation. As with the bullet hole evidence, appellant argues that evidence of the shooting discussion violates Rules 401 and 403 because the discussion and demonstration were about the café shooting, not the freeway shooting.

Appellant has not preserved this subissue for appeal. At trial, appellant's counsel objected that the prosecutor's questions to Hoang were leading and also mentioned Rule 404(b) in a discussion with the trial judge; now appellant argues that this evidence violates Rules 401 and 403. Because the issue on appeal must correspond with the objection made at trial, appellant has not preserved error here. *See Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex.Crim.App.2004); *Fuller v. State*, 827 S.W.2d 919, 928 (Tex.Crim.App.1992).

We overrule appellant's third issue.

### LIMITATION ON CROSS-EXAMINATION

■ In his fourth issue, appellant contends that the trial court violated his Sixth Amendment rights by improperly limiting cross-examination. The trial court refused to allow appellant to cross-examine State's witnesses Rattler and Miller after an alleged confrontation occurred outside of the courtroom between Rattler, Miller, appellant's parents, and appellant's girlfriend.[4]

---

3. During the guilt-innocence phase, Hoang did not specify which shooting he and appellant discussed. Hoang initially told police that appellant told him about the freeway shooting while they were in front of Le's grandmother's house, but Hoang recanted that statement. Hoang testified during the punishment phase that the discussion in front of the house was about the café shooting.

4. In his brief, appellant states that the parties involved in the out-of-court confrontation were Miller, Rattler, *appellant*, appellant's

parents, and appellant's girlfriend. Whether appellant was actually involved in the confrontation is unclear. During the discussion of the confrontation, one of appellant's lawyers informed the judge that the reference to "Mr. Ho" by co-counsel referred to appellant's father, to which co-counsel added, "I'm sorry, I didn't mean the defendant. I mean the dad." This discrepancy is immaterial as appellant's presence or absence at this confrontation does not affect our disposition of this issue.

■■■■ The State claims that appellant failed to preserve error on this issue, but we disagree. When a trial court denies a defendant the opportunity to "elicit certain specific responses from a State's witness," error is preserved by (1) calling the witness to the stand outside the presence of the jury and asking specific questions or (2) making an offer of proof that demonstrates what questions would have been asked and the expected answers to those questions. *See Koehler v. State,* 679 S.W.2d 6, 9 (Tex.Crim.App.1984); *Stults v. State,* 23 S.W.3d 198, 203 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). "However, when the trial court denies a defendant the opportunity to question a witness for the State in the presence of the jury about an entire subject matter that might have shown [the witness] lacked credibility, such as malice, ill will, motive, or bias, defense counsel preserves error by stating the subjects on which he intends to question the witness." *Stults,* 23 S.W.3d at 204. Here, appellant desired to cross-examine Rattler and Miller regarding the out-of-court confrontation in order to establish bias against and animosity toward appellant. The record reflects that appellant requested permission to cross-examine Rattler and Miller for that purpose and that the trial court denied this request. Because appellant stated the subject about which he intended to question the witnesses, appellant has preserved this issue for review.

■■■■ We review a trial court's decision to limit cross-examination under an abuse of discretion standard. *Love v. State,* 861 S.W.2d 899, 903 (Tex.Crim.App. 1993). An abuse of discretion occurs when the trial court acts without reference to any guiding rules or principles. *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex. Crim.App.1990).

■■■■ The Confrontation Clause of the U.S. Constitution guarantees a defendant the right to cross-examine witnesses. *See* U.S. CONST. amend. VI; *Delaware v. Van Arsdall,* 475 U.S. 673, 678, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Carroll v. State,* 916 S.W.2d 494, 496–97 (Tex.Crim. App.1996). A defendant may cross-examine a witness on any subject "reasonably calculated to expose a motive, bias or interest for the witness to testify." *Carroll,* 916 S.W.2d at 497. "However, the trial court has considerable discretion in determining how and when bias may be proved, and what collateral evidence is material for that purpose." *Recer v. State,* 821 S.W.2d 715, 717 (Tex.App.-Houston [14th Dist.] 1991, no pet.). The trial court has the discretion to limit the scope of cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence. *Van Arsdall,* 475 U.S. at 679, 106 S.Ct. 1431; *Stults,* 23 S.W.3d at 204. This limitation does not violate the defendant's "right to confront a witness as long as (1) the possible bias and motive of the State's witness is clear to the trier of fact and (2) the accused has otherwise been afforded an opportunity for a thorough and effective cross-examination." *Stults,* 23 S.W.3d at 204.

The trial judge explained that he would not allow appellant to cross-examine Rattler and Miller regarding the out-of-court incident because the jury could already understand that these two men would have animosity for appellant if they believed that appellant had shot at them and killed one of their friends. We agree with the trial court's assessment. Because the possible bias of Rattler and Miller was clear to the jury and because—as appellant admits—appellant's cross-examination was not otherwise limited by the trial court, we find that appellant's confrontation rights were not violated and that it was not an

abuse of discretion by the trial court to limit appellant's cross-examination of Rattler and Miller. Accordingly, we overrule appellant's fourth issue.

### EVIDENCE OF GANG MEMBERSHIP

 Appellant argues in his fifth issue that the trial court erred by admitting evidence of appellant's gang membership during the punishment phase of trial. Three witnesses testified that appellant was at one time a member of a street gang called the Natoma Boys. Le testified that appellant told Le that he was a member of the Natoma Boys, and Hoang said that appellant had a reputation for being in the Natoma Boys. Charlie Cash, a member of the Houston Police Department specializing in Asian crime, testified that the Houston Police Department documents members of gangs as it becomes aware of them and that appellant was a documented member of the Natoma Boys.

 During the sentencing phase of trial, "evidence may be offered ... as to any matter the court deems relevant," including evidence of the defendant's reputation or character. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp. 2004–2005). Evidence of a defendant's gang membership is relevant because it relates to character. *Beasley v. State,* 902 S.W.2d 452, 456 (Tex.Crim.App.1995); *Aguilar v. State,* 29 S.W.3d 268, 270 (Tex. App.-Houston [14th Dist.] 2000, no pet.). The types of activities in which the gang is involved must also be presented to the jury, so that they may determine if the defendant's gang membership is a positive or a negative character trait. *Beasley,* 902 S.W.2d at 456. If the gang is involved in misconduct or illegal activity, it is not necessary to link the defendant to the bad acts if the jury is "(1) provided with evidence of the defendant's gang membership, (2) provided with evidence of charac-

ter and reputation of the gang, (3) not required to determine if the defendant committed the bad acts or misconduct and (4) only asked to consider reputation or character of the accused." *Id.* at 457.

Appellant argues that the trial court erred in admitting evidence of his membership in the Natoma Boys gang because it was not established that appellant was a member of the gang at the time of the shooting. The State presented testimony from three witnesses that appellant was a member of Natoma Boys from around 1997 through at least 2000. Officer Cash testified that during this time period the Natoma Boys gang was responsible for at least seven murders in Harris County, as well as robberies, drive-by shootings, and witness tampering. Even if appellant was no longer affiliated with the gang at the time of the shooting, evidence that he was a gang member is relevant—and thus admissible at punishment—because it relates to his character. *See* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1); *Beasley,* 902 S.W.2d at 456. Appellant's fifth issue is overruled.

### MOTION FOR MISTRIAL

 In his sixth issue, appellant argues that the trial court erred in denying his motion for mistrial. When Officer Cash testified about appellant's gang membership during the punishment phase, the prosecutor asked him whether appellant had admitted to being in a gang. The following exchange occurred:

> Cash: Well, during the interview, I brought up the things I knew he was involved in and he didn't deny it.
>
> Prosecutor: That's in the interview of this?
>
> Cash: Right.

At this point, appellant's counsel objected and moved for a mistrial on the grounds

that testimony about appellant's post-arrest silence is a violation of section 38.22 of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon 2005). The trial court overruled appellant's motion for mistrial and instructed the jury to disregard the answer given by Cash.[5]

■■■■ The denial of a motion for mistrial is reviewed under an abuse of discretion standard. *Trevino v. State*, 991 S.W.2d 849, 851 (Tex.Crim.App.1999). "Only when it is apparent that an objectionable event at trial is so emotionally inflammatory that curative instructions are not likely to prevent the jury being unfairly prejudiced against the defendant may a motion for mistrial be granted." *Bauder v. State*, 921 S.W.2d 696, 698 (Tex.Crim. App.1996). An instruction to disregard an improper comment on appellant's post-arrest silence is generally sufficient to cure any harm. *See Dinkins v. State*, 894 S.W.2d 330, 356 (Tex.Crim.App.1995); *Hyett v. State*, 58 S.W.3d 826, 833 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd). In the instant case, because the trial court issued a prompt instruction to disregard and because the jury had already heard testimony from Le and Hoang regarding appellant's gang membership, we find that Officer Cash's comment on appellant's post-arrest silence did not unfairly prejudice the jury against appellant. Accordingly, we find that the trial court's denial of appellant's motion for mistrial was not an abuse of discretion, and we overrule appellant's sixth issue.

## MOTION FOR NEW TRIAL

■■■ In his seventh issue, appellant argues that the trial court abused its discretion by denying appellant's motion for new trial. In the motion, appellant sought a new trial based on newly discovered evidence. Appellant explained that he determined the whereabouts of Josh Gumbayan and that Gumbayan is an alibi witness for the unadjudicated extraneous murder of Thao Lam, which, during the punishment phase, the State argued appellant committed.

■■■ Article 40.001 of the Code of Criminal Procedure provides that "[a] new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." TEX. CODE CRIM. PROC. ANN. art. 40.001 (Vernon Supp.2004–2005). Before a new trial based on newly discovered evidence will be granted, the following four-part test must be satisfied:

(1) [T]he newly discovered evidence was unknown or unavailable to the movant at the time of his trial; (2) the movant's failure to discover or obtain the evidence was not due to a lack of diligence; (3) the new evidence is admissible and is not merely cumulative, corroborative, collateral, or impeaching; and (4) the *new evidence is probably true and will* probably bring about a different result on another trial.

*Keeter v. State*, 74 S.W.3d 31, 36–37 (Tex. Crim.App.2002). The trial court has the discretion to decide whether a new trial should be granted based on newly discov-

---

5. In his brief, appellant also argues that the motion for mistrial should have been granted because the prosecutor's questions were an intentional violation of a motion in limine granted before trial. At trial, however, appellant did not assert violations of the motion in limine as a basis for mistrial. Because appellant did not object to the prosecutor's ques-

tions as violative of the motion in limine, error has not been preserved. *See* TEX.R.APP. P. 33.1; *Geuder v. State*, 115 S.W.3d 11, 14–15 (Tex.Crim.App.2003) ("A trial judge's grant or denial of a motion in limine is a preliminary ruling only and normally preserves nothing for appellate review.").

ered evidence; absent an abuse of discretion, its decision will not be reversed. *Id.* at 37.

Appellant received notice of the State's intention to introduce evidence regarding the murder of Lam more than a month prior to the beginning of trial. Appellant asserts that he did not attempt to contact Gumbayan before trial because he never anticipated this case would reach the punishment phase where evidence of Lam's murder could be introduced. Appellant also claims that he did not remember that Gumbayan could be an alibi witness until after trial. We find that appellant has not met at least the first two requirements of the four-part test provided in *Keeter*. Appellant has not shown that the whereabouts of Gumbayan were unavailable to him at the time of trial. Further, appellant was on notice that the State intended to introduce evidence of Lam's murder, but appellant did not exercise diligence in obtaining Gumbayan's testimony. *See Zamora v. State*, 647 S.W.2d 90, 95 (Tex. App.-San Antonio 1983, no pet.) (finding lack of diligence when appellant knew about witness but chose not to inform attorney); *Langley v. State*, No. 14-01-00484-CR, 2002 WL 1041035, at *2 (Tex. App.-Houston [14th Dist.] May 23, 2002, pet. ref'd) (not designated for publication) (finding lack of diligence where appellant took no action in discovering what sort of testimony witness could offer despite knowing witness's identity before trial). Accordingly, the trial court did not err in denying appellant's motion for new trial. Appellant's seventh issue is overruled.

The judgment of the trial court is affirmed.